**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**


ERIC STEPHENSON,

     *Plaintiff,*

*v.*

AMSTED INDUSTRIES INC.,
*dba Means Industries, Inc.*

     *Defendant.*

_____/

CASE NO. 09-CV-12267

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 12)


## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for

summary judgment be **GRANTED**.


## II.    REPORT

### A.    Introduction

This employment discrimination case asserting claims of racial discrimination and

retaliation commenced on June 12, 2009. Plaintiff's claims are brought under 42 U.S.C. § 1981

and the Michigan Elliott Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101 *et seq.* On July

7, 2010, Defendant Amsted Industries, Inc., (hereafter "Defendant" or "Means") filed a motion for

summary judgment. By order of U.S. District Judge Thomas L. Ludington, the motion was

referred to the undersigned magistrate judge for hearing and determination or report and

recommendation pursuant to 28 U.S.C. § 636(b)(1). (Doc. 14.) On August 16, 2010, Plaintiff filed a response to the motion (Doc. 18), and on August 25, 2010, Defendant filed a reply. (Doc. 19.) A hearing was held on August 31, 2010, and the motion was taken under advisement. The day of the hearing, Plaintiff filed a supplemental exhibit. (Doc. 20.) The motion is therefore ready for Report and Recommendation.

## B.    Background

Defendant operates a plant in Saginaw, Michigan, that manufactures transmissions and other precision fabricated stamping and welding components. (Doc. 12, Br. at 1.) Plaintiff began working for Defendant in 1997 as a machine operator. (*Id*. at 2.) In his complaint, Plaintiff alleges that on August 29, 2007, he was "physically assaulted by his supervisor, Jim Brinkman, because of his race." (Compl. ¶ 11.) Plaintiff states that he "lodged a complaint regarding this incident with the human resource department claiming that the assault was race based and that Brinkman was a 'racist.'" (*Id*. ¶ 12.) Six months later, on February 25, 2008, Plaintiff's employment was terminated. Plaintiff was informed by Defendant that he was terminated for "'multiple threats made regarding supervisor and coworkers'" (*Id*. ¶ 13), but Plaintiff alleges that the "the reasons for termination were wholly pretextual in nature." (*Id*. ¶ 14.) Plaintiff contends that the real reason for his termination was retaliation for complaints he made to the Michigan Department of Civil Rights ("MDCR") on November 28, 2005. (*Id*. ¶ 16.)

Defendant moves for summary judgment on Plaintiff's race discrimination claim, asserting (1) that Plaintiff cannot prove that he met Defendant's reasonable expectations or that a similarly-situated person not in the protected class was treated more favorably; (2) that Defendant's decision to terminate his employment was based on Plaintiff's death threats against another employee,

which is a legitimate non-discriminatory reason; and (3) that Plaintiff has no evidence that Defendant's reason is mere pretext. (Doc. 12.) Defendant moves for summary judgment on Plaintiff's retaliation claim, asserting that there is no causal connection between Plaintiff's submission of a MDCR complaint made in 2005 and his termination in 2008.

## C. Motion Standards

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, and will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

The non-moving party has an obligation to respond to the motion and present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**D.     Analysis & Conclusion**

**1.     Employment Discrimination Claim**

Several statutes prohibit employment discrimination; in this case Plaintiff has brought suit under 42 U.S.C. § 1981 and the Michigan Elliot Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* Although Plaintiff has not brought suit under Title VII, 42 U.S.C. § 2000 *et seq.*, the same standards apply to claims brought under all three statutes, so case law applying one statute may be cited to support legal propositions under any of the three. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) ("'We review claims of alleged race discrimination brought under § 1981 and the Elliot-Larsen Act under the same standards as claims of race discrimination brought under Title VII'") (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)).

To demonstrate a prima facie case of race discrimination, "the plaintiff must show that '(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting *DiCarlo v. Potter*, 358

F.3d 408, 415 (6th Cir. 2004)).  A plaintiff may show that he was the victim of discrimination by either direct evidence or through indirect evidence.  "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  "Consistent with this definition, direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co*., 319 F.3d 858, 865 (6th Cir. 2003).

In this case, Defendant contends that Plaintiff has brought forth no direct evidence of discrimination.  (Mot., Doc. 12 at 14.)  Plaintiff does not refute this assertion.  (Resp., Doc. 18 at 10.)

Absent direct evidence of racial discrimination, the plaintiff bears the initial burden of production under the *McDonnell Douglas* burden-shifting scheme, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to show a prima facie case of discrimination.  *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).  If the plaintiff makes a prima facie case, the burden then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the employment decision.  *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).  To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons" for its decision.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  "An articulation not admitted into evidence will not suffice.  Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel."  *Id*. at 256 n.9.  Finally, if the

defendant meets its burden of articulation, the burden shifts back to the plaintiff to show that the reason put forth by the defendant is pretextual, which can be done "'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

### a.     Prima Facie Case

In this case, the parties do not dispute that Plaintiff meets the first two elements of the prima facie case: he is African-American and he was terminated. Defendant asserts, however, that Plaintiff cannot raise a material question of fact with regard to the third and fourth elements.

### I.     Qualified for the Position

The third element is whether Plaintiff was "qualified for the position." *Wright*, 455 F.3d at 707. Defendant argues that Plaintiff cannot establish the third element because he was not qualified for the position due to his failure to meet Defendant's "reasonable expectations," citing *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548-49 (6th Cir. 1991) (quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)). Specifically, Defendant states that

> Plaintiff knowingly and willfully threatened to kill a co-worker and a supervisor on February 23, 2008, by blowing their brains out. Plaintiff's inappropriate behavior was in direct violation of Means' written Plant Rules and Regulations which preclude "[b]odily assault to any person on Company property" and "[i]ntimidation, coercion or threatening of other employees." (Ex. C) Such an intentional violation of Means' Plant Rules and Regulations clearly demonstrates that Plaintiff did not live up to Means' reasonable business expectations. Since Plaintiff was not meeting basic legitimate expectations as required by the third prong of the *McDonnell Douglas* formula, he cannot establish a prima facie case of race discrimination under Title VII, Section 1981, or the ELCRA and his race discrimination claims must be dismissed.

(Doc. 12 at 14-15.)

Plaintiff counters that the evidence "easily" meets the third element because Plaintiff repeatedly testified at his deposition that he did not make any threatening statements to his co-worker or his supervisors. Plaintiff also argues that Defendant has improperly interjected its alleged legitimate nondiscriminatory reason for termination into the prima facie case, which is prohibited by *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003). (Doc. 18 at 10.)

Defendant's assertion that Plaintiff's alleged conduct on February 23, 2008, can be considered in the analysis of the third factor of the prima facie case is based upon the Sixth Circuit case of *Ang*, *supra*, which in turn relied upon *McDonald, supra.* In *McDonald*, the plaintiff acknowledged that his supervisors considered him unqualified for his position and "were dissatisfied with his job performance . . . when he was discharged," but argued that they "made too big a deal of his alleged 'people problems.'" *McDonald*, 898 F.2d at 1160. With respect to determining whether the plaintiff was "qualified," the court explained that "the aim is not to review bad business decisions, or question the soundness of an employer's judgment." *Id.* Thus, based on the plaintiff's concession that his supervisors were not satisfied with his job performance, the court found that the plaintiff could not establish the third element of the prima facie case, i.e., that he was "qualified" for the position. *Id.*

In *White v. Wexler*, *supra*, which is cited by Defendant, the district court applied *McDonald* and held that the plaintiff, a store manager, failed to establish the third element of the prima facie case because his store's sales were declining and therefore he was not meeting his employer's legitimate expectations. *White*, 317 F.3d at 574. The Sixth Circuit found this conclusion to be "flawed for two reasons":

> First, a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie

case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.").

> Second, there is insufficient proof in the record for us to conclude that Wexler was unqualified, as a matter of law, because of the store's declining sales.

*Id.* at 574-75. The court distinguished *McDonald* by pointing out that, in *McDonald*, the plaintiff *conceded* that he was not performing his job duties at a level which met his employer's legitimate expectations, whereas in *Wexler* there was no such concession, but only the fact that store sales were declining, which of course could have been caused by many factors other than the store manager's qualifications or performance. *Id.* at 575.

Applying *McDonald* and *Wexler* to the present case, I suggest that this Court cannot consider Plaintiff's alleged death threats when analyzing the third prong of the prima facie case. Plaintiff has not conceded that he was not performing his job duties at a level which measured up to his employer's expectations, which distinguishes this case from *McDonald*. Furthermore, to do so would violate the express holding of *Cline* that the court must examine a plaintiff's evidence independent of the nondiscriminatory basis asserted by the defense as its reason for terminating the plaintiff and it would also render useless the burden-shifting framework of *McDonnell-Douglas*.

Accordingly, I suggest that Defendant's assertion that Plaintiff cannot satisfy the third element of the prima facie fails to carry the day.

ii.     **Replaced By Someone Outside the Class or Treated Differently than a Similarly- Situated Non-Protected Employee**

Defendant next asserts that Plaintiff has failed to establish the fourth prong of the prima facie case. There are two alternative tests by which a plaintiff can meet the fourth element: (1) that he was replaced by someone outside the protected class; or (2) that he was treated differently than similarly-situated, non-protected employees. *Wright*, 455 F.3d at 707. When using the comparable employee test, a plaintiff "must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992). The parties to be compared must be similarly situated in all relevant respects; that is, they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell*, 964 F.2d at 583). Defendant argues that, to meet this test,

> Plaintiff would have to compare himself to a Caucasian employee in an Operator Maintenance Press Operator position who reported to the same supervisor, had the same prior disciplinary history, who threatened to kill co-workers by "going to get his gun and blowing . . . their fu\*\*ing brains out," and who was not terminated. Not surprisingly, Plaintiff is at an utter loss to identify any specific comparable employees.

(Doc. 12 at 15.)

Although Plaintiff responds by arguing that Defendant's comparison is "inappropriate," Plaintiff does not make any effort to identify a similarly-situated employee who was outside the protected class and treated differently. Instead, Plaintiff focuses on the alternative test for meeting

the fourth element and alleges that he was replaced by a member outside of his protected class. (Doc. 18 at 11.) Plaintiff counsel's entire argument on this point is to state that "Plaintiff was replaced by Steve Lamb a Caucasian" and cite to Plaintiff's affidavit. (*Id*.) Plaintiff's affidavit, which is signed by Plaintiff but not notarized, states, "I have been informed by two (2) Means Industries employees (i.e. John Hasset & Theresa Reed) who worked in the same department as myself that I was replaced by John Lamb." (Doc. 18, Ex. 4 ¶ 2.) The Court presumes that the name "John" is a typographical error and that Plaintiff intended the name to be "Steve" Lamb, since the next paragraph of the affidavit lists six employees of Defendant, one of whom is Steve Lamb, and asserts that these six are all Caucasian. (*Id*. ¶ 3.)

Defendant counters Plaintiff's argument by pointing the Court's attention to the sworn affidavit of Defendant's Personnel Specialist Theresa Jankowiak wherein she states that "at no time after Plaintiff's termination has Means hired anyone to fill Plaintiff's former Operator Maintenance position in the Aisin Department." (Doc. 19 at 1; Ex. A ¶ 5.) Instead, she explains that Plaintiff's job duties were spread to Steve Lamb, an individual who had already been working in Plaintiff's job classification and had been an employee of Defendant since April 2000. (*Id*.; Ex. A ¶ 4.) Defendant cites *Lilley v. BTM Corp*., 958 F.2d 746 (6th Cir. 1992), where the court held that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Id*. at 752.

At the stage of summary judgment, Plaintiff must support his claims with specific facts and supporting evidence, not mere allegations and speculation. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 623 (6th Cir. 2003); *Henry v. Wausau Bus. Ins. Co*., 351 F.3d 710, 713 (6th Cir. 2003). Here, Plaintiff's only evidence on this issue is an unsworn affidavit alleging that

he was replaced by Steve Lamb. He has not submitted any supporting affidavits or declarations from any other individuals. Furthermore, [h]earsay evidence may not be considered on summary judgment. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Plaintiff asserts that two other employees informed him that he was replaced by Steve Lamb. Thus, Plaintiff is offering the unsworn statements of these two employees purely for the truth of the matter asserted, and therefore these statements are hearsay and barred from consideration pursuant to *Jacklyn*.

Accordingly, because Plaintiff has failed to establish the fourth element of his prima facie case, I suggest that Defendant's motion for summary judgment be granted with regard to Plaintiff's claim of racial discrimination.

b.      **Alternative Analysis: Legitimate Nondiscriminatory Reason**

Although I suggest that Defendant is entitled to summary judgment on this claim because Plaintiff failed to meet his burden of establishing a prima facie case, in the interests of judicial economy on review of this motion I will address Defendant's alternate arguments in favor of summary judgment.

Assuming that Plaintiff satisfied his burden to present a prima facie case of racial discrimination, the burden of production shifts to Defendant to come forward with a legitimate nondiscriminatory reason for the adverse employment action. *Carter*, 349 F.3d at 273. Here, Defendant asserts that Plaintiff was terminated for making death threats to coworkers on February 23, 2008, and points out that several courts have held that death threats against coworkers constitute a legitimate nondiscriminatory reason for termination. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (collecting cases).

Defendant has supported its motion with documentation – affidavits, deposition testimony, and numerous company documents – related to the incident, the subsequent investigation, the decision to terminate, and the arbitration hearing. (Doc. 12 at Exs. A - LL.) The affidavit of Brandy Rousseau, who worked at Means as a press operator, states that during a shift on February 23, 2008, Plaintiff noticed that some bags on the work tables had been closed and asked Rousseau and another press operator, Melissa Wittkopp, who had closed "his stuff." (Rousseau Aff., Doc. 12 at Ex. DD ¶ 6.) When Plaintiff was informed that Supervisor Jim Brinkman had closed the bags, Plaintiff stated that "Brinkman should not be touching 'his stuff.'" (*Id*.) Rousseau avers that Plaintiff next angrily stated, "I'm going to punch him [Brinkman] in his fucking face" and that he was "going to get his gun and blow his [Brinkman's] fucking brains out." (*Id*.) Wittkopp avers that she then told Plaintiff that he should not be talking like that and Plaintiff responded by telling Wittkopp, "I am going to blow your brains out." (Wittkopp Aff., Doc. 12 at Ex. CC ¶ 6.) Brinkman and others had by that time arrived on the scene and tried to calm everyone down. (*Id*. ¶ 7.) Brinkman testified that when he arrived he heard Plaintiff state at least twice to Melissa Wittkopp that he was going to get a gun and blow her "F-ing head off." (Brinkman Dep., Doc. 12, Ex. AA at 13.)

An investigation into the incident began immediately. (Doc. 12, Br. at 9; Ex. B at 160-61.) Wittkopp was interviewed later that day, and again on February 25, 2008, which was the next working day. (Ex. CC ¶¶ 8-9.) Rousseau was also interviewed about the incident on the 23rd and on the 25th. (Ex. DD ¶¶ 8-9.) Defendant's plant manager, with the agreement of the operations manager, the vice president of manufacturing, and the personnel specialist, determined that Plaintiff should be suspended pending the outcome of the investigation. (Doc. 12, Br. at 10.)

Plaintiff was informed of the suspension by telephone and told not to report to work on the 25th, but Plaintiff nevertheless arrived for his shift and "created a very disruptive situation." (*Id*.) The police had to be called to gain assistance in removing Plaintiff from the premises, but Plaintiff left before the police arrived. (*Id*.)

Plaintiff's union representative presented Defendant with Plaintiff's written statement about the incident. According to Plaintiff, he "may have raised his voice" and "made the remark – 'this is why you see things like this on the TV/News about people coming into their workplace and being shot.'" (Plaintiff's Statement, Doc. 12, Ex. GG at 2.) On February 26, 2008, Plaintiff failed to appear as scheduled at Means to give his version of events, so Defendant notified him via Federal Express that an investigation hearing would be held on February 29, 2008. (Doc. 12, Br. at 11.) At Plaintiff's request, the hearing was held via telephone and was taped and transcribed. Plaintiff denied making the threatening statements and had no reasonable explanation why Wittkopp, Rousseau, and Brinkman would make such false accusations against him, although he speculated that they were either delusional or had partied too hard the night before. (*Id*.)

After considering the evidence gathered during the investigation, the determination was made to terminate Plaintiff's employment. On March 3, 2008, Plaintiff was informed by letter of the results of the investigation and the company's decision. (Doc. 12 at Ex. FF.) Plaintiff and the Union filed a grievance challenging the suspension and termination, which Defendants points out did not mention or allege that Plaintiff's termination was motivated by race or retaliation. (Doc. 12, Br. at 12; Ex. B at 218-19.) The grievance went to arbitration, and on September 10, 2008, the arbitrator issued his opinion denying Plaintiff's grievance and upholding Plaintiff's suspension and termination. (Ex. LL.)

I suggest that Defendant has met its burden to come forward with a legitimate nondiscriminatory reason for Plaintiff's termination. The burden of production then shifts back to Plaintiff to "prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Carter*, 349 F.3d at 273.

### c.    Pretext

A proffered reason is pretextual if it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). *See also Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 545 (6th Cir. 2008); *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). Plaintiff in this case argues both that Defendant's proffered reason had no basis in fact and that it did not actually motivate his termination.

In order to show there was no basis in fact for the decision made, "a Plaintiff must put forth 'evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false.'" *Abdulnour v. Campbell Soup Supply Co. LLC*, 502 F.3d 496, 502-03 (6th Cir. 2007) (citations omitted) (granting summary judgment where "Plaintiff fails to provide evidence that these complaints were false, inaccurate, or not made"). However, as long as an employer had an honest belief in its proffered non-discriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual even if the reason is ultimately shown to be incorrect, mistaken or foolish. *Majewski v. Auto. Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001). "If the employer honestly, albeit mistakenly, believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer arguably lacks the necessary discriminatory intent." *Smith v. Chrysler Corp*., 155 F.3d 799, 806 (6th Cir. 1998).

Plaintiff asserts that he did not make the threatening statements that he was accused of making, and therefore he has established pretext. (Resp., Doc. 18 at 13 ("In the present case, the Plaintiff dispute[s] making the threats towards his co-workers and his supervisor. Accordingly, pretext is established by this fact.") Clearly, under the Sixth Circuit precedent cited above, Plaintiff's denial by itself is not enough to establish pretext on the basis of factual falsity, he must put forth evidence to demonstrate that the reason is factually false, which he has not done. Plaintiff, for example, has not submitted an affidavit from another employee who was in the workplace on the day in question that contradicts the three employees' testimony that death threats were made. Plaintiff provides nothing but his own denial. Defendant, on the other hand, has submitted affidavits and deposition testimony of the three employees who stated that they personally heard Plaintiff make death threats against a coworker and a supervisor, which supports Defendant's assertion that, even if the threats were not actually made, Defendant had a reasonable basis for believing that they did occur and acting accordingly.

### ii. Whether Proffered Reason Actually Motivated Defendant's Conduct

Plaintiff also argues that the death threat incident was not the real motivating factor in his termination, but rather that Defendant was motived by racism. Plaintiff alleges that the human resources individuals who claim to have made the decision to terminate his employment had, in the past, refused to interview Plaintiff and "other witnesses" even though "they were aware . . . that Plaintiff thought that certain employees (including Brinkman) were racist and that he was being treated unfavorably." (Doc. 18 at 14.) Plaintiff has submitted no evidence, however, to support this statement. He has not pointed the Court's attention to one complaint to supervisors that went unanswered or provided an affidavit from one of these "other witnesses." Defendant points to

Plaintiff's deposition testimony where he was asked the question, "did you at any time ever fill out a harassment or complaint questionnaire and submit it to anyone at Means Industries at any time during your employment," to which Plaintiff answered, "No." (Pl's Dep., Doc. 12, Ex. B at 267.)

Defendant readily acknowledges that Plaintiff filed two Union grievances and two charges of discrimination with the Michigan Department of Civil Rights ("MDCR") during his employment. (Doc. 12 at 4.) The grievances were both filed on November 7, 2005. One was not related to racial discrimination, but rather alleged that a suspension Plaintiff received was excessive; that grievance was resolved. (*Id*. at 5.) The other grievance alleged that Plaintiff was being racially discriminated against with regard to job assignments. Defendant responded to that grievance by asserting that the job assignment in question was made so that Plaintiff could be cross-trained, which was beneficial for him and for Defendant. (*Id*.; *see also* Ex. T.) The Union did not further dispute this issue or take the matter to arbitration. (*Id*.) Plaintiff, however, followed up on November 28, 2005, by filing a charge of discrimination with the MDCR on this issue. The MDCR dismissed the charge. (*Id*. at 6.) Two weeks later, Plaintiff filed another charge with the MDCR, this time alleging that Defendant's denial of his request for an emergency vacation day to seek medical attention was discriminatory based on his race. (Doc. 12 at Ex. W.) Plaintiff voluntarily withdrew this charge on January 30, 2006, stating that he had no interest in pursuing the matter. (*Id*. at Ex. X.)

In order to show that Defendant's proffered reason did not actually motivate Defendant's challenged conduct, "Plaintiff must show 'that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.'" *Id.* at 503 (citations omitted). "The reasonableness of the employer's reasons may of

course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose as a pretext, if indeed it is one." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) (quoted with approval in *White v. Baxter Healthcare*, 533 F.3d 381, 394 (6th Cir. 2008) (finding that plaintiff's "superior qualifications" coupled with the employer's "subjective" proffered perceptions of plaintiff as "aggressive" and "lacking in management vision" were sufficient evidence of pretext to survive summary judgment)). "Pretext, however, cannot be shown by attacking the decision itself." *Hein v. All American Plywood Co., Inc.*, 232 F.3d 482, 490 (6th Cir. 2000).

Guided by these cases, I suggest that Plaintiff cannot demonstrate that Defendant's reason did not "actually motivate" Defendant. In this case, the proffered reason for termination was not a subjective one, such as in *White*, but rather was based upon the testimony of three employees who alleged that Plaintiff made threats of workplace violence. In addition, Plaintiff has not come forward with any evidence to show that past discrimination makes it "more likely than not" that the employer's explanation is a pretext. Nor has Plaintiff shown how Defendant's decision was so "idiosyncratic" or "questionable" that only pretext could explain an otherwise obtuse decision. *Loeb*, 600 F.2d at 1012.

I therefore suggest that even if Plaintiff could establish a prima facie case, since there is no evidence tending to show that Defendant's proffered reason was a pretext for discrimination, Defendant's motion for summary judgment should be granted with respect to this claim.

## 2. Retaliation Claim

Plaintiff alleges that Defendant retaliated against him by terminating his employment "because he filed a Complaint with the Michigan Department of Civil Rights alleging violations

of Title VII and the ELCRA which are protected activities." (Compl., Doc. 1 ¶ 45.) Plaintiff brings his retaliation claim under 42 U.S.C. § 1981. (*Id.* ¶¶ 25-29.)

Title VII prohibits retaliation against an employee because that employee has "opposed any practice made an unlawful employment practice by [Title VII]" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Plaintiff's claim is brought under 42 U.S.C. § 1981,[1] which also prohibits retaliation on the basis of race, even though the statute is silent on that cause of action. *CBOCS West v. Humphries*, 553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008). As stated previously, the same standards apply to claims brought under either statute.

To maintain a claim for retaliation, an employee must establish that (1) the employee engaged in protected activity; (2) the defendant knew that the employee engaged in protected activity; (3) the defendant subsequently took an adverse employment action against the employee; (4) the adverse action was causally related to the protected activity. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir.

---

[1]The statute provides in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

2008). Courts analyzing retaliation claims apply the *McDonnell Douglas* framework of shifting burdens of production and proof. *Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107, 1118 (6th Cir. 1996).

Defendant moves for summary judgment on this claim on the grounds that Plaintiff cannot make out a prima facie case of retaliation because he cannot demonstrate any causal connection between the filing of Plaintiff's two MDCR charges in 2005 and his termination from employment in 2008. (Doc. 12 at 19.) In response, Plaintiff does not attempt to refute Defendant's assertion that temporal proximity does not exist so as to satisfy the fourth element of the prima facie case. (Resp., Doc. 18 at 19.) Indeed, where the time lapse between the protected activity and the adverse employment action was more than two years, courts have held that there is no temporal proximity. *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 363 Fed. App'x 317, 332 (6th Cir. 2010) (where termination occurred a little more than two years after protected activity, the doctrine of temporal proximity is not helpful). Plaintiff nevertheless asserts that sufficient other evidence exists in the record to establish a causal connection and satisfy the prima facie case.

To establish a causal connection, a plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)) (internal quotation marks omitted). Plaintiff states that he has

> submitted evidence that Brinkman demonstrated hostility towards the Plaintiff after he was accused by Plaintiff of discriminating against him on the basis of his race. As another example, Gluski has provided testimony demonstrating hostility wherein he complained about the fact that the Plaintiff had made repeated, frequent, and constant complaints of race discrimination and how much time it would have taken him to investigate all of the allegations of race being made by the Plaintiff. As another example, the Defendant on at least one occasion required Plaintiff to drop an earlier charge of discrimination in order for the Plaintiff to return to work.

(Doc. 18 at 19.)  I suggest that these uncited references to various bits of deposition testimony regarding "hostility" toward Plaintiff are insufficient to establish a causal connection between the filing of the MDCR charges in 2005 and the termination in 2008, because they do not touch on or concern either of those events, let alone allow the Court to make an inference of a causal connection between the two events.  While this testimony could possibly have been relevant had Plaintiff brought a claim of discrimination based upon hostile work environment, he chose not to do so.

Accordingly, I suggest that Defendant's motion for summary judgment be granted with respect to the retaliation claim and that the case be dismissed in its entirety.


**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  FED. R. CIV. P. 72(b)(2).  *See also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


s/ Charles E. Binder

Dated: October 13, 2010

CHARLES E. BINDER
United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Manda Westervelt and Brian Swanson, and served on District Judge Ludington in the traditional manner.


Date: October 13, 2010

By      s/Jean L. Broucek
Case Manager to Magistrate Judge Binder