UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC STEPHENSON,

                Plaintiff,                      Case Number 09-cv-12267
                                                      Honorable Thomas L. Ludington

v.

AMSTED INDUSTRIES INC.,
d/b/a Means Industries, Inc.,

                Defendant.
_____/

**<u>ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND
RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE</u>**

On July 9, 2010, Defendant Amsted Industries d/b/a Mean Industries' ("Means") motion for summary judgment [Dkt. # 12] was referred to United States Magistrate Judge Charles E. Binder for report and recommendation. Judge Binder issued a report and recommendation on Defendant's motion on October 13, 2010 [Dkt. # 22]. In his report, Judge Binder recommended granting Defendant's motion for summary judgment because Plaintiff Eric Stephenson did not demonstrate a prima facie case of race discrimination under 42 U.S.C. § 1981 and the Michigan Elliot Larsen Civil Rights Act, M.C.L. § 37.2101 et seq. Alternatively, Judge Binder recommended that even if Plaintiff were able to establish a prima facie case of discrimination, Defendant has provided a legitimate, nondiscriminatory reason for termination of Plaintiff's employment and Plaintiff has not provided evidence showing that Defendant's proffered reason was a pretext for discrimination. Finally, Judge Binder recommended that Plaintiff did not advance a prima facie case of retaliation under 42 U.S.C. § 1981. On October 27, 2010, Plaintiff timely filed an objection to Judge Binder's report and recommendation [Dkt. # 23]. Defendant filed a response on November 9, 2010 [Dkt. #

24].

The Court has reviewed the report and recommendation, and agrees that Plaintiff has not demonstrated a prima facie case of race discrimination or retaliation and that, alternatively, Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's termination which Plaintiff has not shown to be a pretext for discrimination. Accordingly, the Court will overrule Plaintiff's objections, adopt Judge Binder's report and recommendation, grant Defendant's motion for summary judgment, and dismiss Plaintiff's complaint with prejudice.

# I

Defendant manufactures transmissions and other precision fabricated stamping and welding components in Saginaw, Michigan. Plaintiff began working for Defendant in July 1997 as a machine operator. After completing his 90-day probationary period, he became a union member, giving him access to the grievance process provided for in the collective bargaining agreement between Plaintiff's union and Means. Plaintiff held a number of positions while at Means including a tapping weld position, an I-shaft operator, a saw operator, a maintenance press operator, press operator, and a tap and weld tech operator.

Plaintiff received a total of ten disciplinary actions in his record during his employment at Means, two of which involved intimidation, coercion or threatening of an employee. During Plaintiff's last full year of employment, two minor disciplinary actions were undertaken, which included a written reprimand for habitual tardiness or leaving early in August 2007 and a verbal warning notice for damaging a die in December 2007. Plaintiff did not submit any harassment or discrimination complaint forms as a result of any of the disciplinary actions.

Plaintiff did, however, file two grievances on November 7, 2005. The first grievance alleged

that Plaintiff felt he was being racially discriminated against regarding job assignment. Means denied the grievance, finding that Plaintiff was chosen for cross-training and position changes due to seniority and business practice decisions. Plaintiff's union did not dispute Means' determination and the matter was not submitted to arbitration. The second grievance alleged that Plaintiff's concurrent three-day suspensions, after he threatened and intimated his female supervisor on October 27, 2005, were excessive. The second grievance was eventually resolved between Means and Plaintiff's union.

Plaintiff subsequently filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR") on November 28, 2005 and December 14, 2005. The first charge alleged that Plaintiff was discriminated against on the basis of race regarding job assignments and further alleged that Plaintiff was discriminated against and retaliated against when he was suspended on October 27, 2005 for complaining about being assigned to work at another plant. MDCR dismissed Plaintiff's first charge. On December 14, 2005, Plaintiff filed a second charge of discrimination with the MDCR. This charge alleged that Means discriminated against Plaintiff based on his race when it denied his request for an emergency vacation day to seek medical attention. Plaintiff voluntarily withdrew his second charge in January 2006. Plaintiff's next disciplinary action was not until almost two years later when he received a written reprimand for habitual tardiness on August 16, 2007.

On August 29, 2007, Plaintiff's supervisor, Jim Brinkman, asked Plaintiff to change places on the sorting line so a more experienced sorter could sort the parts for defects first after a customer requested that Means improve the visual quality of the parts it was receiving. Plaintiff and Brinkman began arguing about the move on the sorting line, and during the confrontation, Brinkman's hand made contact with Plaintiff's chest. Brinkman alleges that one of his fingers

inadvertently touched Plaintiff but Plaintiff alleges that Brinkman punched him. Brinkman then apologized, and Plaintiff accepted his apology. Plaintiff did not file a harassment or discrimination complaint alleging race discrimination as a result of the altercation but Means nonetheless investigated the incident. After speaking with individuals who were present, Theresa Diebold-Jankowiak, the Personnel Specialist, and Richard Kobman, the Plaint Manager, concluded that Brinkman's touching Plaintiff was inadvertent.

On February 23, 2008, Plaintiff noticed that the desiccant bags[1] on his work tables were closed during an overtime shift. After seeking an answer as to why his bags were closed, a coworker, Melissa Wittkopp, informed Plaintiff that Brinkman had closed the desiccant bags. Plaintiff stated that "Brinkman should not be touching 'his stuff'." Plaintiff also stated that he was going to "punch [Brinkman] in his . . . face" and that he was "going to get his gun and blow [Brinkman's] . . . brains out." (Def.'s Mot. for Summ. J. Ex. CC; Ex. DD.) Witkopp advised Plaintiff not to speak that way and he responded that it was alright to say what he had because he did not mention anyone's name. (Def.'s Mot. for Summ. J. Ex. CC.) When Witkopp continued her criticism, Plainitff told her that he was going "blow [her] brains out." (*Id.*) During Plaintiff's altercation with Witkopp, Brinkman arrived and heard Plaintiff tell Witkopp two additional times that he was going to blow her head off. Brinkman then intervened in an attempt to diffuse the situation and a press operator also came over to help in calming Plaintiff down.

Shortly after the altercation, Brinkman radioed for Tom Stafford, the afternoon Shift Superintendent, to come over and assist with the situation. Stafford brought a union representative, Stephen Wilding, and the two men began investigating what had transpired. During their

---

[1] A desiccant bag is a square bag that is placed inside the middle of a product to prevent rust damage to the part. (Def.'s Mot. for Summ. J. Ex. B at 89, 91.)

investigation, Stafford and Wilding interviewed Plaintiff, Wittkopp, and Brandy Rousseau, who was also present during the altercation. The next day Means' Operations Manager, Walt Lewtschanyn, advised Kobman that Plaintiff should be suspended from work as a result of the February 23 incident and Kobman agreed. During Plaintiff's suspension, Diebold-Jankowiak collected signed statements from Wittkopp and Rousseau after interviewing them regarding the February 23 incident with their union representative present. Diebold-Jankowiak then called Plaintiff on February 25, 2008, informing him that he was suspended pending an investigation and that he should not report to work for his afternoon shift. Despite this instruction, Plaintiff still arrived at his afternoon shift and refused to leave the facility. Diebold-Jankowiak called the police for assistance in removing Plaintiff from the facility, but Plaintiff left before the police arrived.

Means received a statement from Plaintiff's union representative regarding the February 23 incident on February 25, 2008. Plaintiff told his union representative that he "may have raised his voice" and made the remark "this is why you see things like this on the TV/News about people coming into their workplace and being shot." (Def.'s Mot. for Summ. J. Ex. GG.) Plaintiff was scheduled to appear at Means for an interview regarding his version of the February 23 events, but he refused to appear. Means then sent Plaintiff a notice informing him that an investigation hearing was scheduled for February 29, 2008. Plaintiff subsequently requested that the interview be conducted via telephone, and Means agreed. Plaintiff was interviewed by Gluski and Bill Waters on February 29, 2008. During the interview, Plaintiff denied responsibility for any misconduct and did not offer a reasonable explanation for his actions. In explaining why the other individuals had provided false stories about the incident, Plaintiff alleged that Wittkopp was delusional and that Rousseau had partied too hard the night before to remember what happened. (Def.'s Mot. for Summ.

J. Ex. FF.)

As a result of the investigation of the February 23 incident, Gluski and Diebold-Jankowiak concluded that Plaintiff's employment should be terminated. They came to this conclusion after considering the seriousness of the rules violation, and the safety of other plant employees, as well as striving to maintain consistency with past handling of employee threats. On March 3, 2008, Means sent Plaintiff a letter terminating his employment. Two days later, Plaintiff and his union filed a grievance challenging Plaintiff's suspension and termination. The grievance does not allege that Plaintiff's termination was racially discriminatory or retaliatory. The grievance went before an arbitrator on July 23, 2008, and during the arbitration hearing Plaintiff stated that he did not believe the allegedly false accusations were made against him because he was African-American. The arbitrator issued an opinion and award on September 10, 2008, denying Plaintiff's grievance and upholding his suspension and termination for just cause. Plaintiff then filed his complaint in this Court alleging race discrimination and retaliation, alleging that "the reasons for termination were wholly pretextual in nature." (*Id.* ¶ 14.) Plaintiff contends that the real reason for his termination was retaliation for complaints he made to the MDCR on November 28, 2005. (*Id.* ¶ 16.)

**II**

In his objections, Plaintiff largely restates his arguments from his response to Defendant's motion for summary judgment. Although Plaintiff makes a number of brief objections in his introduction, he only discusses two specific objections in his brief. Plaintiff first objects to Judge Binder's recommendation that Plaintiff has not provided evidence that Defendant's proffered reasons for his termination were pretextual. Plaintiff supports this contention with the same arguments provided in his response to Defendant's motion for summary judgment. Specifically,

Plaintiff contends that he did not threaten to kill or harm anyone, undermining Defendant's decision which Plaintiff believes was motivated by race-based animosity resulting from his accusing his superior of racism in the past.

Plaintiff also asserts that there is a "clear history" of animosity between he and his superior, Jim Brinkman, of which Plaintiff contends that Bruce Gluski, Means' Corporate Director of Human Resources, was aware. Additionally, Plaintiff asserts that Gluski testified in his deposition that Plaintiff's race was considered in coming to the decision to terminate his employment. This, coupled with what Plaintiff characterizes as Gluski admitting to breaching polices and procedures in not investigating Plaintiff's allegations of race discrimination constitute evidence of pretext. *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387 (6th Cir. 2005).

Plaintiff also objects to Judge Binder's finding that he has not established a retaliation claim under 42 U.S.C. § 1981. Plaintiff notes that he has provided evidence not only of the temporal relationship between his protected activities[2] and his termination, but has also provided evidence that Brinkman demonstrated hostility towards Plaintiff after he was accused of discriminating against him on the basis of race. Plaintiff asserts that Gluski's deposition testimony regarding the company's policies and procedures and his investigation into Plaintiff's complaints demonstrate Gluski's hostility towards Plaintiff as well. Plaintiff states that he was also required to drop an earlier discrimination complaint in order to continue his employment with Defendant.

Plaintiff, however, mischaracterizes Gluski's deposition testimony that he cites as evidence that Defendant's explanation for the termination of his employment was pretextual. In his

---

[2] Plaintiff's protected activities include filing a complaint with the Michigan Department of Civil Rights ("MDCR") for race discrimination while employed by Defendant and making frequent and repeated complaints of race discrimination and racially motivated ill-treatment to Defendant.

deposition, Gluski stated that in coming to the decision to terminate Plaintiff's employment, he and another individual discussed the need to be consistent with disciplinary actions but did not use the word "race" in this discussion. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 5.) Furthermore, Gluski outlined the policies and procedures for investigating allegations of discrimination during his deposition, and stated that when investigating Plaintiff's allegations of discrimination he might not have necessarily asked Plaintiff why he thought race was a factor in his treatment during the course of his investigation. (*Id.*) Gluski testified that he thought following "where the trail leads" was more helpful than speaking with Plaintiff because of the volume of his complaints and the incoherent responses that had been received in the past. (*Id.*)

The conclusory objections about claims and legal rights made in Plaintiff's introduction do not identify any specific errors that merit review because they are not clear enough to enable the Court to discern what is being communicated. *Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2006); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). As to the two objections Plaintiff discusses in his brief, Plaintiff does not assert that Judge Binder misapplied the law, failed to consider any evidence, misconstrued any evidence, or gave inappropriate weight to any evidence. Plaintiff's objections simply reassert arguments made in his response to Defendant's motion for summary judgment and, in doing so, misconstrues Gluski's deposition testimony on which he places significant reliance.

The Court agrees with Judge Binder's analysis, and Plaintiff's objections do not undermine the analysis. Plaintiff asserts, largely based on his mischaracterization of Gluski's deposition testimony regarding investigation into Plaintiff's complaints of discrimination, that he has provided evidence that Means' legitimate, non-discriminatory reasons for his termination were pretext. Plaintiff also reasserts that he did not make any threats to other employees, but he has not produced

any witnesses to corroborate this assertion. Plaintiff's denial that a death threat was made and his challenge to the adequacy of Means' investigation into his discrimination complaints are insufficient to establish pretext for discrimination. *Hugley v. Art Institute of Chicago*, 3 F. Supp. 2d 900 (N.D. Ill. 1998). Defendant, however, relied on the incident reports from three of its employees who were present in deciding to terminate Plaintiff's employment. Plaintiff has not provided evidence that Means' lacked an honest and reasonable belief in its proffered non-discriminatory reasons for his termination. Accordingly, the Court will overrule Plaintiff's objection.

Judge Binder also correctly stated that the elements of a prima facie case of retaliation under 42 U.S.C. § 1981 are: (1) the employee engaged in protected activity; (2) the defendant knew that the employee engaged in protected activity; (3) the defendant subsequently took an adverse employment action against the employee; and (4) the adverse action was causally related to the protected activity. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). The Court agrees with Judge Binder's analysis concluding that Plaintiff cannot satisfy the fourth element of a prima facie case of retaliation, and Plaintiff's objections do not undermine this analysis. Plaintiff's objections recite the "bits of deposition testimony regarding 'hostility' " which Judge Binder found unpersuasive in establishing a causal connection between Plaintiff's filing charges with the MDCR in 2005 and his termination in 2008. As a result, the Court will overrule Plaintiff's objections.

**II**

Accordingly, it is **ORDERED** that Plaintiff's objections [Dkt. # 23] are **OVERRULED**.

It is further **ORDERED** that Judge Binder's report and recommendation [Dkt. # 22] is **ADOPTED.**

It is further **ORDERED** that Defendant's motions for summary judgment [Dkt. # 12] is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint [Dkt. #1] is **DISMISSED WITH PREJUDICE**.

                                                          s/Thomas L. Ludington  
                                                          THOMAS L. LUDINGTON  
                                                          United States District Judge

Dated: March 1, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2011

                                          s/Tracy A. Jacobs  
                                          TRACY A. JACOBS